## IN RE: MCK MILLENNIUM CENTRE PARKING, LLC, Debtor.

**Gina B. Krol, not individually but as the duly assigned Chapter 7 Trustee, Plaintiff,**

v.

**Key Bank National Association, individually and as successor by merger to Key Bank Real Estate Capital Markets, Inc. d/b/a Key Bank Real Estate Capital Markets, Inc. Wells Fargo Bank, N.A., as successor trustee to LaSalle Bank N.A., for the Registered Holders of Merrill Lynch Mortgage Trust 2005–MKB2 Commercial Mortgage Pass–Through Certificates, Series 2005–MKB2, Defendants.**

**Case No. 12–24676**
**Adversary No. 14–00392**

United States Bankruptcy Court, N.D. Illinois, Eastern Division.

Signed April 30, 2015

---

Shelly A. DeRousse, Devon J. Eggert, Steven M. Hartmann, Freeborn & Peters LLP, E. Philip Groben, Cohen and Krol, Chicago, IL, for Plaintiff.

Brett D. Anders, Polsinelli PC, Kansas City, MO, Faisal Delawalla, Leslie Allen Bayles, Bryan Cave LLP, Chicago, IL, Lawrence P. Gottesman, Michelle K. McMahon, Bryan Cave LLP, New York, NY, for Defendants.

### Amended Memorandum Opinion & Recommendations to the District Court on Defendants' Motion to Dismiss (dkt. no. 47)

Jacqueline P. Cox, United States Bankruptcy Judge

This matter is before the Court for ruling on the Motion of Key Bank National Association, individually and as successor by merger to Key Bank Real Estate Capital Markets, Inc., d/b/a Key Bank Real Estate Capital Markets, Inc., Wells Fargo Bank, N.A., as successor trustee to La-Salle Bank N.A., for the Registered Holders of Merrill Lynch Mortgage Trust 2005–MKB2 Commercial Mortgage Pass–Through Certificates, Series 2005–MKB2 ("Defendants") to Dismiss Plaintiff's First Amended Complaint. For the reasons that follow, the Motion is Granted on Count VI. As to Counts I–V, findings of fact and conclusions of law will be proposed for entry of judgment by the District Court.

### I. Jurisdiction

The Court has jurisdiction to hear this matter under 28 U.S.C. § 1334 and Internal Operating Procedure 15(a) of the United States District Court for the Northern District of Illinois. This matter is a statutorily core proceeding under 28 U.S.C. §§ 157(b)(2)(F) and (H): an action to avoid and recover alleged preferential and fraudulent transfers. In *Stern v. Marshall,* however, the United States Supreme Court recognized constitutional limitations on bankruptcy courts' authority to enter final orders. *Stern v. Marshall,* —— U.S. ——, 131 S.Ct. 2594, 2620, 180 L.Ed.2d 475 (2011). Thus, before reaching the merits, the Court must address whether it has authority to enter a final order on Plaintiff's preference and fraudulent transfer claims.

In Count VI of the Amended Complaint, the Trustee seeks the avoidance of transfers alleged to have been preferences. Those claims involve an express bankruptcy provision, 11 U.S.C. § 547(b), which allows a trustee to avoid payments made by a debtor on the eve of bankruptcy. *See, e.g., Stern,* at *2618*; *Shurn v. Gilbert (In re Gulf Coast Glass & Erection Co., Inc.),* 484 B.R. 685, 692 (Bankr.S.D. Texas 2013) (noting that preferential transfer claims are available only under bankruptcy law); *KHI Liquidation Trust v. Wisenbaker Builder Servs., Inc. (In re Kimball Hill, Inc.),* 480 B.R. 894, 904–905 (Bankr. N.D.Ill.2012) (bankruptcy court may enter final orders on preference claims regardless of whether a proof of claim had been

filed because the proceeding "stems from the bankruptcy itself."); *Reid v. Presbitero (In re First Choice Drywall, Inc.)*, 2012 WL 4471570, at **2–3 (Bankr.N.D.Ill.2012) (After *Stern*, bankruptcy courts have constitutional authority to determine preference actions). *See also West v. Freedom Medical, Inc. (In re Apex Long Term Acute Care)*, 465 B.R. 452, 463 (Bankr.S.D. Texas 2011), where the Court explained:

> The cause of action for preferential transfers is established by the Bankruptcy Code. The provision for recovering preferences is integrally bound up in the overall scheme for ensuring equitable distribution among creditors. Preferential transfers are payments for legitimate debts. Preferences are avoidable precisely because they enable some creditors to receive more than their fair distribution under the Bankruptcy Code. The entire purpose of the cause of action, then, is to enforce the Bankruptcy Code's equality of distribution. In this respect, preferential transfer actions are fundamentally different from fraudulent transfer actions, although the two causes of action superficially resemble.

Accordingly, the Court determines that it has both constitutional and statutory authority to enter a final judgment order on Plaintiff's preference claims.

However, the fraudulent transfer claims alleged in Counts I, II, III, IV and V may not be constitutionally core under the precedent set by *Stern v. Marshall* and its progeny. *See Executive Benefits Ins. Agency v. Arkison*, —— U.S. ——, 134 S.Ct. 2165, 2174, 189 L.Ed.2d 83 (2014) ("The Court of Appeals held, and we assume without deciding, that fraudulent conveyance claims in this case are *Stern* claims."). Proceedings that do not arise in a bankruptcy case or under title 11 but are otherwise related to a bankruptcy case are non-core proceedings. *See* 28 U.S.C. § 157(c)(1).

 As allowed by 28 U.S.C. § 157(b)(1), a bankruptcy judge to whom a case has been referred may enter final judgment on core proceedings arising in or under the Bankruptcy Code. "Arising under" jurisdiction covers matters for which a claim is made under a provision of title 11, the United States Bankruptcy Code ("Bankruptcy Code"), such as claims for damages for violation of the automatic stay under 11 U.S.C. § 362(k)(1). "Arising in" jurisdiction covers matters that are not based on any right expressly created by title 11, but nevertheless, would have no existence outside of the bankruptcy, such as administrative matters. *See Matter of Wood*, 825 F.2d 90, 96–97 (5th Cir.1987).

A bankruptcy judge may hear non-core matters, but absent consent of the parties, must submit proposed findings of fact and conclusions of law to the district court, and any final order or judgment shall be entered by the district court after considering the bankruptcy judge's proposed findings and conclusions and after reviewing de novo those matters to which any party has timely and specifically objected. 28 U.S.C. §§ 157(c)(1) and (c)(2).

 The test for determining whether a civil proceeding is related to a bankruptcy case is whether its outcome could conceivably have any effect on the estate being administered in bankruptcy. *In re Greektown Holdings, LLC.*, 728 F.3d 567, 577 (6th Cir.2013). In *In re Xonics*, 813 F.2d 127, 131 (7th Cir.1987) (internal citation omitted), the Seventh Circuit ruled that a non-core proceeding is related to a bankruptcy case "only when the dispute is 'related to' the bankruptcy—meaning that it affects the amount of property available for distribution or the allocation of property among creditors." Here, the Trustee's

fraudulent transfer claims, if successful, would net the bankruptcy estate over $5,000,000 for distribution to creditors. The Court determines it has related to jurisdiction to hear the non-core fraudulent transfer claims.

As such, the Court will submit proposed findings of fact and conclusions of law to the District Court regarding the fraudulent transfer claims.[1]

## II. Facts and Background

At all relevant times, Defendant Key Bank National Association was a national banking association with its principal place of business in Cleveland, Ohio. (Amended Complaint, ¶ 7.)

Key Bank Real Estate Capital Markets, Inc. d/b/a Key Bank Real Estate Capital was an Ohio corporation. Key Bank Real Estate Capital Markets was a wholly-owned subsidiary of Key Bank National Association and ceased to exist after it merged into Key Bank National Association in 2013. Key Bank National Association is the successor by merger to Key Bank Real Estate Capital Markets, Inc. ("Key"). (Amended Complaint, ¶ 8.)

Wells Fargo, N.A., a national banking association, is the Successor Trustee to LaSalle Bank, N.A., for the Registered Holders of Merrill Lynch Mortgage Trust 2005–MKB2 Commercial Mortgage Pass–Through Certificates, Series 2005–MKB2 (the "Trust" or "Trust Defendant"). (Amended Complaint, ¶ 9.)

On June 19, 2012 ("Petition Date"), MCK Millennium Centre Parking, LLC (the "Debtor") filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code. On September 10, 2013, the case was converted to Chapter 7 of the Bankruptcy Code, and Gina Krol was appointed as the Chapter 7 Trustee ("Trustee").

According to the List of Equity Security Holders filed by the Debtor, Cataldo Family Enterprises LLC held a 25% equity interest in the Debtor; State Street Investment ("SSI") held a 50% equity interest in the Debtor, and William Marovitz held a 25% interest in the Debtor (together, the "Equity Holders"). (Amended Complaint, ¶ 12.) Joseph Koshabe ("Koshabe") held 100% of the equity interest in SSI. SSI was the Debtor's managing member. (Amended Complaint, ¶ 13.)

1. 28 U.S.C. § 157(c)(2) allows a bankruptcy judge to enter final orders on non-core claims with the consent of all parties to the proceeding. Federal Rule of Bankruptcy Procedure 7008(a) requires in adversary proceedings before a bankruptcy judge that the complaint "contain a statement that the proceeding is core or non-core and, if non-core, that the pleader does or does not consent to entry of final orders or judgment by the bankruptcy judge." Federal Rule of Bankruptcy Procedure 7012(b) in turn provides:

> [a] responsive pleading shall admit or deny an allegation that the proceeding is core or non-core. If the response is that the proceeding is non-core, it shall include a statement that the party does or does not consent to entry of final orders or judgment by the bankruptcy judge. In non-core proceedings final orders and judgments shall

not be entered on the bankruptcy judge's order except with the express consent of the parties.

In the Amended Complaint Plaintiff alleges that this is a "core proceeding[s] pursuant to 28 U.S.C. § 57(b)(2)(A) [sic] and (H)." (Amended Complaint, ¶ 2.) The Defendants' Motion indicates that they do not consent to the entry of final orders or judgments by a bankruptcy judge. Motion, dkt. no. 47, p. 5. No Defendants have filed a proof of claim. Given the uncertainty surrounding whether the fraudulent transfer claims herein are *Stern* claims, and the lack of express consent by the parties as the Plaintiff does not acknowledge that the fraudulent conveyance claims are non-core, the Court will submit proposed findings of fact and conclusions of law to the District Court on the fraudulent transfer claims.

At the § 341 meeting of creditors, Koshabe testified that the Equity Holders own MCK Millennium Centre Retail, LLC ("Retail"), an insider of the Debtor.[2] (Amended Complaint, ¶ 15.) Prior to June 19, 2008, the Trust made a loan to Retail, not the Debtor, in the amount of $11,200,000 (the "Loan"). (Amended Complaint, ¶ 17; Promissory Note, dkt. no. 48, Exhibit A to Memorandum of Law ("Mem. of Law"), p. 4.) The note that was executed by Retail was to be transferred to the Trust and managed as a commercial mortgage-backed securitization. (Promissory Note, Section II. A., Ex. A to Mem. of Law, dkt. no. 48.)

On June 18, 2014, the Chapter 7 Trustee filed this adversary proceeding which seeks to avoid fraudulent and preferential transfers. The core of this dispute is that the Debtor made payments on a loan on which it was not an obligor. Retail, an entity owned by the Debtor's owners, was the obligor. The Transfers the Debtor made to the Defendants were applied to the Trust's loan to Retail. (Amended Complaint, ¶ 26.) Plaintiff alleges that one or more of the Equity Holders of the Debtor, or the persons or entities controlling them, caused the Debtor to pay Retail's debt. Essentially, the Plaintiff's position is that the Debtor received no consideration for the transfers to the Trust.

On November 13, 2014, the Plaintiff filed an Amended Complaint herein ("Amended Complaint"); she alleges that between June 26, 2008 and June 19, 2012, the Debtor made a series of payments totaling over $5 million (together, the "Transfers") to Key in repayment of the Loan. (Exhibits B & C to Amended Complaint.) These payments were held by Key for a period of time, before they were transferred to the Trust. (Amended Complaint, ¶¶ 19–20.)

The Amended Complaint asserts six claims for relief:

In Count I, Plaintiff asserts a claim for avoidance and recovery of transfers made over a two year period totaling $2,213,942.06 ("Two Year Transfers") under § 548(a)(1)(B), the Bankruptcy Code's constructive fraud provision, and § 550, which provides for recovery of voided transfers.

Count II seeks to avoid the Two Year Transfers under § 548(a)(1)(A), the Bankruptcy Code's actual fraud provision, which voids transfers made with actual intent to hinder, delay or defraud creditors, and recovery under § 550.

In Count III, Plaintiff seeks to avoid transfers made over a four year period, totaling $4,320,527.65 under a constructive fraud theory, pursuant to the Illinois Uniform Fraudulent Transfer Act ("IL UFTA"), 740 ILCS 160/5(a)(2).

Count IV asserts a claim for avoidance of constructive fraud transfers pursuant to the IL UFTA § 6(a).

Count V seeks to avoid transfers made with the intent to hinder, delay or defraud the Debtor's creditors pursuant to IL UFTA § 5(a)(1).

Count VI seeks to avoid preferential payments made to the Defendants within 90 days prior to the Petition Date pursuant to 11 U.S.C. § 547(b), and to recover those payments under § 550.

---

**2.** The Debtor's owners own Retail. Section 101(31)(B) of the Bankruptcy Code provides that an insider includes, with respect to a corporation, a person in control of the Debtor. Retail's owners, also being the Debtor's owners, were in control of the Debtor. 11 U.S.C. § 101(31)(B)(iii). Accordingly, Retail is an insider of the Debtor within the meaning of § 101(31)(B)(iii). (Amended Complaint, ¶¶ 16, 97.)

On December 15, 2014, the Defendants filed the instant Motion to Dismiss First Amended Complaint ("Motion") and a supporting Mem. of Law. (Dkt Nos. 47, 48.)

## III. Discussion

### A. Motion to Dismiss Standards

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 1949 (quoting *Bell Atl.,* 550 U.S. at 556, 127 S.Ct. 1955). In ruling on a motion to dismiss, the court must accept all well-pleaded facts as true and construe the allegations of the complaint in the light most favorable to the plaintiff. *Tamayo v. Blagojevich,* 526 F.3d 1074, 1081 (7th Cir.2008). Dismissal is appropriate only if it is clear in the pleadings that no set of facts could be proven in support of the plaintiff's claims that would entitle him to the relief requested. *Panaras v. Liquid Carbonic Indus. Corp.,* 74 F.3d 786, 791 (7th Cir.1996).

### B. Plaintiff's Request to Convert to Motion for Summary Judgment

█ In her Response, the Plaintiff suggests that because the Defendants' Motion includes an affidavit and supporting documents, the Court should convert it to a motion for summary judgment and allow discovery to proceed. (Response, p. 13, dkt. no. 61.) The Motion includes the brief affidavit of Erin Loveall which summarizes a few provisions of the Pooling and Servicing Agreement ("PSA").

The Court disagrees. The document which is dispositive herein is the Pooling and Servicing Agreement ("PSA"); it is mentioned in significant detail in the Plaintiff's Amended Complaint at paragraphs 18–23. At paragraph 18, the Plaintiff alleges that Key was the Trust's agent/master with respect to the Trust's loan to Retail, the Debtor's insider. At paragraph 19, the Plaintiff alleges that $5 million was transferred to Key. In paragraph 20, the Plaintiff alleges that Key exercised dominion and control over the Transfers before transferring some or all of said amounts to the Trust. In paragraph 21, the Plaintiff alleges that pursuant to its agreement with the Trust, Key had certain rights to exercise dominion and control over the Transfers, including the right to invest the money; keep the investment income; repay losses from investments; make P & I and servicing advances; reimburse itself for advances plus interest; and to deduct its fees from the funds in its possession and control. At paragraph 22, the Plaintiff alleges that Key retained an interest in the Transfers in the form of its outstanding fees as well as an Excess Servicing Strip. The Plaintiff also noted that Key had discretion to waive borrowers' obligations to pay default charges and interest on loans being prepaid. The Plaintiff filed her Amended Complaint with a good grasp of the relevant facts. These are the facts and assertions which the Court analyzed in resolving the Motion. The Court will deny the Plaintiff's requests to consider the Defendants' Motion as a motion for summary judgment and to allow discovery (made at page 13 of her Response, dkt. no. 61).

### C. The Amended Complaint Relates Back

█ The Defendants argue that the Amended Complaint is time-barred as to the Trust under Bankruptcy Code § 546(a)

unless it relates back to the Complaint pursuant to Federal Rule of Civil Procedure Rule 15(c)(1)(C) (made applicable to these proceedings by Federal Rule of Bankruptcy Procedure 7015).

Section 546(a) requires that an avoidance action be brought after the earlier of:

(1) the later of—

(A) 2 years after the entry of the order for relief; or

(B) 1 year after the appointment or election of the first trustee under section 702, 1104, 1163, 1202, or 1302 of this title if such appointment or such election occurs before the expiration of the period specified in subparagraph (A); or

(2) the time the case is closed or dismissed.

11 U.S.C. § 546(a).

As noted above, the voluntary petition for relief was filed on June 19, 2012, making June 19, 2014 the last day to file an avoidance action. On June 18, 2014, the Plaintiff filed her original adversary complaint for avoidance and recovery of transfers, naming only Key Bank Real Estate Capital, Key Corporate Bank, Key Bank, N.A. and KeyCorp as Defendants. The Trust was not named as a party.

The original complaint alleged that the Debtor made certain transfers to Key Bank National Association while the Debtor was insolvent and that the transfers were recoverable from Key as fraudulent or preferential transfers. The Plaintiff later learned that Key was a "mere conduit" via an August 12, 2014 letter from Defendants' counsel, which explained that the Transfers were held temporarily by Key before being transferred to the Trust.

On November 13, 2014, after the expiration of the two-year statute of limitations period, the Plaintiff filed the Amended Complaint, adding the Trust as a defendant.

### 1. Relation Back to add the Trust as a Defendant

Federal Rule of Civil Procedure 15(c)(1)(C) provides that an amendment to a pleading relates back to the date of the original pleading when:

(C) the amendment changes the party or the naming of the party against whom a claim is asserted, if Rule 15(c)(1)(B) is satisfied and if, within the period provided by Rule 4(m) for serving the summons and complaint, the party to be brought in by amendment;

(i) received such notice of the action that it will not be prejudiced in defending on the merits; and

(ii) knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity.

Fed. R. Civ. P. 15(c)(1)(C).

### a. The Trust Defendant will not be Prejudiced in Defending the Merits of this Adversary Proceeding

It appears from the pleadings that the Trust Defendant does not dispute that it received notice of the original complaint such that it will not be prejudiced in defending the action on the merits. Plaintiff's Response includes a 2008 power of attorney which purports to authorize Key to defend the Trust in any action in accordance with the Defendants' PSA. (Response, Group Exhibit 2, ¶ 3(b), dkt. no. 61.) Plaintiff also included therein emails, which suggest that the Trust received notice of the original complaint prior to the expiration of the statute of limitations. (Response, Group Exhibit 2, pp. 2–7.) Accordingly, the Court determines that the timeliness requirement has been met.

### b. Trust Defendant Knew it Would have Been Named as a Party, but for a Mistake by the Plaintiff

As to the second requirement, the Defendants argue that the Amended Complaint does not relate back to the original filing, as the Plaintiff did not make a "mistake" within the meaning of Rule 15(c). The Court disagrees. In *Krupski v. Costa Crociere S. p. A.,* 560 U.S. 538, 548, 130 S.Ct. 2485, 2493, 177 L.Ed.2d 48 (2010), the United States Supreme Court held that the relevant inquiry under Rule 15(c)(1)(C)(ii) is whether the prospective defendant knew or should have known that it would have been named as a defendant, but for an error. There, the plaintiff brought an action against a carrier to recover for injuries sustained while aboard a cruise ship. In the original complaint, the plaintiff named Costa Cruise, the sales and marketing agent of the cruise ship, rather than Costa Crociere, the cruise carrier. After the statute of limitations period expired, the plaintiff amended the complaint, adding Costa Crociere as a defendant. The district court dismissed the amended complaint, finding that the plaintiff had not made a mistake concerning the identity of the proper party. The district court opined that the word mistake should not encompass a plaintiff's deliberate decision not to sue a party whose identity the plaintiff knew before the expiration of the statute of limitations period. The Eleventh Circuit Court of Appeals affirmed. The Supreme Court reversed, explaining:

> Information in the plaintiff's possession is relevant only if it bears on the defendant's understanding of whether the plaintiff made a mistake regarding the proper party's identity. For purposes of that inquiry, it would be error to conflate knowledge of a party's existence with the absence of mistake. A mistake is "[a]n error, misconception, or misunderstanding; an erroneous belief ... A

plaintiff may know that a prospective defendant—call him party A—exists, while erroneously believing him to have the status of party B. Similarly, a plaintiff may know generally what party A does while misunderstanding the roles that party A and party B played in the conduct, transaction, or occurrence giving rise to her claim. If the plaintiff sues party B instead of party A under these circumstances, she has made a mistake concerning the proper party's identity notwithstanding her knowledge of the existence of both parties." The only question under Rule 15(c)(1)(C)(ii), then, is whether Party A knew or should have known that, absent some mistake, the action would have been brought against him.

*Krupski,* 560 U.S. at 548–549, 130 S.Ct. 2485. (internal citations omitted).

The Defendants herein recognize *Krupski* as the controlling authority on the issue, but complain that the Plaintiff's decision not to sue the Trust was the result of her failure to investigate whether there were additional defendants, rather than a "mistake" as contemplated by Rule 15(c). Even if Defendants' assertion in this regard is true, under *Krupski* and its progeny, it would not preclude Plaintiff from amending under Rule 15(c). *See, e.g., Joseph v. Elan Motorsports Technologies Racing Corp.,* 638 F.3d 555, 560 (7th Cir. 2011) ("The fact that the plaintiff was careless in failing to discover his mistake is relevant to a defendant's claim of prejudice ... But carelessness is no longer a ground independent of prejudice for refusing to allow relation back"); *Esparza v. Dart, et al,* Case No. 14 cv 1390, 2014 WL 5628050, at *4. In any event, the Plaintiff maintains that it was her intention throughout these proceedings to sue the entity that received the Transfers. (Plaintiff's Response, pp. 10–12, dkt. no. 61.) In

Plaintiff's Motion for Leave to File First Amended Adversary Complaint ("Motion for Leave"), she states that "with respect to the additional defendant, the Trustee was not aware that certain Key Bank Defendants served as a master servicer for the Trust (the holder of the underlying Loan), to which the Key Bank Defendants claim the master servicer subsequently conveyed some or all of the transfers in question, until learning of these assertions in the Motion to Dismiss." (Motion for Leave, dkt. no. 30, p. 4.) This scenario was addressed in the *Krupski* decision. The Court noted that "a plaintiff might know that the prospective defendant exists but nonetheless harbor a misunderstanding about his status or role in the events giving rise to the claim at issue, and she may mistakenly choose to sue a different defendant based on that misimpression." *Krupski*, 560 U.S. at 549, 130 S.Ct. 2485. The pleadings in this case suggest that the Plaintiff misunderstood the ultimate disposition of the Transfers. As a result of that misunderstanding about the relationship between Key and the Trust, the Plaintiff brought suit against Key, rather than against Key and the Trust.

The Trust Defendant also seems to take issue with the Plaintiff's request to add an entirely different party, the Trust, rather than substitute one party for another. However, the Seventh Circuit's decision in *Joseph* expressly contemplates cases where the plaintiff "would have sued [the prospective defendant] instead *or in addition to suing the named defendant*" but for a mistake. *Joseph*, 638 F.3d at 559–60. (emphasis added). Here, the Plaintiff would have sued the Trust in addition to the Key Defendants, but for her mistake concerning the structure of the Transfers.

The Amended Complaint relates back to the original complaint. The Plaintiff has complied with Rule 15(c)(1)(C).

## D. Safe Harbor Provision—11 U.S.C. § 546(e)

The Defendants seek dismissal of Counts I, II, III, IV, V and VI of the Amended Complaint, on the grounds that the Transfers are protected by the § 546(e) safe harbor provision. They contend that the payments are covered by this statute because Key is a financial institution and the payments to the Trust were made in connection with a securities contract.

The Plaintiff responds that on its face, the safe harbor provision does not apply to the Transfers, because they were not made "in connection with a securities contract." Plaintiff also asserts that the Trust may not rely on the safe harbor provision because it is not a "financial institution." (Response, dkt. no. 61, p. 3.)

The Court disagrees, and determines that the safe harbor provision protects the Transfers at issue in Counts I, III, IV and VI of the Amended Complaint. Counts II and V allege actual fraud, which the safe harbor does not cover.

The Bankruptcy Code allows a trustee to avoid and recover pre-petition fraudulent and preference transfers made by a debtor. Section 546(e) of the Bankruptcy Code, however, provides a "safe harbor" from the trustee's efforts by protecting certain payments from the avoiding powers. The provision was enacted to "minimiz[e] the displacement caused in the commodities and securities markets in the event of a major bankruptcy affecting those industries." *In re Madoff Inv. Sec., LLC*, 773 F.3d 411, 416 (2d Cir.2014) (quoting *Enron Creditors Recovery Corp. v. Alfa, S.A.B. de C.V. (In re Enron Creditors Recovery Corp.)*, 651 F.3d 329, 334 (2d Cir.2011). Section 546(e) provides as follows:

Notwithstanding sections 544, 545, 547, 548(a)(1)(B), and 548(b) of this title, the trustee may not avoid a transfer that is a margin payment, as defined in section 101, 741, or 761 of this title, or settlement payment, as defined in section 101 or 741 of this title, made by or to (or for the benefit of) a commodity broker, forward contract merchant, stockbroker, financial institution, financial participant, or securities clearing agency, or that is a transfer made by or to (or for the benefit of) a commodity broker, forward contract merchant, stockbroker, financial institution, financial participant, or securities clearing agency, in connection with a securities contract, as defined in section 741(7), commodity contract, as defined in section 761(4), or forward contract, that is made before the commencement of the case, except under section 548(a)(1)(A) of this title.

11 U.S.C. § 546(e).

Under § 548(a)(1)(A) of the Bankruptcy Code a trustee may avoid a transfer made with the actual intent to hinder, delay, or defraud any entity to which the debtor was or became indebted; this is the Bankruptcy Code's actual fraud transfer provision. Under § 548(a)(1)(B), a trustee may avoid a transfer made for less than reasonably equivalent value if the debtor was insolvent at the time of the transfer or became insolvent as a result of the transfer; this is the Bankruptcy Code's constructive fraud transfer provision.

Section 546(e) does not protect transfers that were made with the actual intent to hinder, delay or defraud a creditor.

Defendants must prove each element of § 546(e) to bar a plaintiff from avoiding a transfer. *Grayson Consulting, Inc. v. Wachovia Securities et al, LLC (In re Derivium Capital, LLC)*, 437 B.R. 798, 812 (Bankr.D.S.C.2010)).

### 1. The Transfers were Made by and To a Financial Institution.

■ Section 101(22) of the Bankruptcy Code defines "financial institution" as:

(A) a Federal reserve bank, or an entity that is a commercial or savings bank, industrial savings bank, savings and loan association, trust company, federally-insured credit union, or receiver, liquidating agent, or conservator for such entity and, when any such Federal reserve bank, receiver, liquidating agent, conservator or entity is acting as agent or custodian for a customer (whether or not a "customer", as defined in section 741) in connection with a securities contract (as defined in section 741) such customer; or

(B) in connection with a securities contract (as defined in section 741) an investment company registered under the Investment Company Act of 1940.

11 U.S.C. § 101(22)(A)-(B).

The parties do not dispute that Key is a financial institution. Section 101(22)(A) clearly states that a commercial bank is a financial institution. (Amended Complaint, ¶ 8.) What the parties do dispute, however, is whether Key's status as a mere conduit in the transaction precludes it from safe harbor protection. The Plaintiff maintains that § 546(e) is not available to Key because it received no transfer to or for its own benefit and use. (Response, dkt. no. 61, p. 6.) The Court disagrees. As noted above, Key, as master servicer of the Loan, held the payments from the Debtor temporarily before transferring them to the Trust. (Motion, p 14.) "Generally, 'mere conduits' hold transferred funds via escrow, trust, or deposit, and do so only in the status of commercial or professional intermediaries for the parties that actually hold or receive a legal right, title or interest." *Nelmark v. Helms*, 02 C 0925, 2003 WL 1089363, at *3 n. 4 (N.D.Ill.

2003) (internal citations omitted). The Court recognizes that there is a split in authority regarding the role a financial institution must play in transactions that qualify for safe harbor protection. Most circuits that have addressed this issue have held that the plain language of the statute includes transfers made to financial institutions that serve only as a conduit or intermediary. *See, e.g., QSI Holdings, Inc. v. Alford (In re QSI Holdings, Inc.),* 571 F.3d 545, 550–551 (6th Cir.2009); *Contemporary Indus. Corp. v. Frost,* 564 F.3d 981, 987 (8th Cir.2009); *Lowenschuss v. Resorts Int'l, Inc. (In re Resorts Int'l, Inc.),* 181 F.3d 505, 516 (3d Cir.1999).

However, in *Mumford v. Valuation Research Corp (In re Mumford, Inc.),* 98 F.3d 604, 610 (11th Cir.1996), the Eleventh Circuit Court of Appeals held that the financial institution must acquire a beneficial interest for the safe harbor to apply. The Court determines that the former interpretation is the better view. "The meaning of the phrase 'by or to' in § 546(e) ... means just that—payments made either by or to a financial institution. The understanding and application of the phrase does not generally require careful parsing or close semantic scrutiny." *D.E.I. Systems, Inc. v. Bevan,* 996 F.Supp.2d 1142, 1146 (D.Utah 2014). The Court declines to read into the statute the additional requirement that the financial institution receive some financial benefit or acquire the funds for its own use.[3] The Plaintiff alleges that $5 million was transferred *to* Key (a financial institution) and then subsequently transferred *by* Key to the Trust. Key, as alleged in the Amended Complaint, is a national banking association. (Amended Complaint, ¶ 8). Applying the text as written, the Court finds that the Transfers were made by and to a financial institution.

### 2. The Transfers were Made in Connection with a Securities Contract

■ The Court must determine whether the Transfers the Defendants received were made in connection with a "securities contract" within the meaning of § 546(e).

### a. The Commercial Mortgage Securitization is a Securities Contract

Section 741(7)(A) of the Bankruptcy Code defines a securities contract as:

(i) a contract for the purchase, sale, or loan of a security, a certificate of deposit, a mortgage loan, any interest in a mortgage loan, a group or index of securities, certificates of deposit, or mortgage loans or interests therein (including an interest therein or based on the value thereof), or option on any of the foregoing, including an option to purchase or sell any such security, certificate of deposit, mortgage loan, interest, group or index, or option, and including any repurchase or reverse repurchase transaction on any such security, certificate of deposit, mortgage loan, interest, group or index, or option (whether or not such repurchase or reverse repurchase transaction is a "repurchase agreement", as defined in section 101);
* * *

(vii) any other agreement or transaction that is similar to an agreement or transaction referred to in this subparagraph;

"[T]he term 'securities contract' expansively includes contracts for the purchase or sale of securities, as well as any agreements that are similar or related to con-

---

**3.** The Court notes that Key was allowed to invest the funds, which may mean that it received transfers for its own benefit.

tracts for the purchase or sale of securities." *In re Madoff Inv. Sec., LLC,* 773 F.3d at 418.

As noted above, a promissory note was executed for the $11,200,000 Loan made to Retail. As part of the securitization plan outlined in the PSA, the mortgage Loan was then transferred into a real estate mortgage conduit, a REMIC trust (here, the Trust).[4] The trustee held legal title to the Loan, and a number of other loans, for the benefit of the owners of the Trust, certificate holders. (Decl. of Erin Loveall, dkt. no. 48, Attachment 1, found after p. 31 of Mem. of Law.) The two-tiered securitization of a commercial loan is referred to as a commercial mortgage-backed securitization ("CMBS"). According to the Commercial Real Estate Secondary Market and Securitization Association, a CMBS is defined as securities collateralized by a pool of mortgages on commercial real estate in which all principal and interest from the mortgages flow to certificate holders in a defined sequence or manner.

In a typical CMBS transaction, multiple mortgages are sold to a trust qualified as a real estate mortgage conduit ("REMIC") for tax purposes. The REMIC in turn sells certificates entitling the holders to payments from principal and interest on this large pool of mortgages. The holders of the CMBS securities typically have different rights to the income stream and bear different interest rates; they may or may not have different control rights.

The REMIC is managed by a master servicer that handles day-to-day loan administration functions and services the loans when they are not in default.

*See In re General Growth Properties, Inc.,* 409 B.R. 43, 51 (Bankr.S.D.N.Y.2009) (citing Talcott J. Franklin and Thomas F. Nealon III, MORTGAGE AND ASSET BACKED SECURITIES LITIGATION HANDBOOK § 1.6 (April 2008)). The trustee, Wells Fargo, N.A., held the Loan. (Decl. of Erin Loveall, Exhibit to Mem. of Law, dkt. no. 48.) Key was the Trust's master servicer. (Amended Complaint, ¶ 18.) The general structure of the CMBS transaction is noted in the PSA. The PSA also identifies Merrill Lynch Mortgage Investors, Inc. as the Depositor and KeyCorp Real Estate Capital Markets, Inc. as the Master Servicer. The Preliminary Statement of the PSA provides:

> The Depositor intends to sell mortgage pass-through certificates, to be issued hereunder in multiple classes, which in the aggregate will evidence the entire beneficial ownership interest in a trust fund to be created hereunder, the primary assets of which will be the Mortgage Loans.

(PSA, p. vii, Exhibit B to Mem. of. Law, dkt. no. 48.)

In support of dismissal, the Defendants argue that the integration of the Loan with the subsequent PSA (the CMBS transaction) qualifies as a "securities contract" as defined by the Bankruptcy Code. Plaintiff responds that while some courts have broadly interpreted the phrase "in connection with a securities contract," no court has applied the exception to payments of the type discussed in this case. That may be so, however, the absence of cases pre-

---

**4.** The Amended Complaint references an "agreement" between the Trust and Key, which ostensibly refers to the Pooling and Servicing Agreement, dated March 1, 2005. (Amended Complaint, ¶¶ 18–22, dkt. no. 36.) Because the document was relied upon in the Amended Complaint, it may be considered by the Court in ruling on the Motion to Dismiss. *See Phillips v. Prudential Ins. Co. of Am.,* 714 F.3d 1017, 1019–1020 (7th Cir.2013) (recognizing that in ruling on a motion to dismiss, the court must consider both the complaint and documents that are critical to and referred to in the complaint).

cisely on point does not change the plain text of the statute, which is written broadly enough to encompass the transactions herein. This Court addressed the reach of the safe harbor protections of § 546(e) in *In re Lancelot Investors Fund, L.P.,* 467 B.R. 643 (Bankr.N.D.Ill.2012). There, the chapter 7 trustee brought adversary proceedings to avoid and recover redemption payments made to investors by chapter 7 hedge-fund debtors, which were operated as a second-tier ponzi scheme. The defendants moved for summary judgment, arguing that the transfers were protected by the safe harbor provision. In response, the chapter 7 trustee argued that the settlement payments were not eligible for safe harbor protection because they were tainted by fraud. In ruling for the defendants, the Court declined to look beyond the plain statutory text of the safe harbor provision by reading exceptions into the Bankruptcy Code. The Seventh Circuit affirmed, noting:

> The text is what it is and must be applied whether or not the result seems equitable ... Statutes are often written more broadly than their genesis suggests. *RadLAX Gateway Hotel, LLC v. Amalgamated Bank,* — U.S. ——, 132 S.Ct. 2065, 2073, 182 L.Ed.2d 967 (2012) tells us that "[t]he Bankruptcy Code standardizes an expansive (and sometimes unruly) area of law, and it is our obligation to interpret the Code clearly and predictably using well established principles of statutory construction." We apply the text—which both Houses of Congress approved and the President signed—not themes from a history that was neither passed by a majority of either House nor signed into law.

*See Peterson v. Somers Dublin Ltd.,* 729 F.3d 741, 749 (7th Cir.2013) (internal citations omitted). Other courts that have discussed the reach of § 546(e) have held that the provision was written expansively. *See, e.g., Hellas Telecomms v. TPG Capital Mgmt., L.P. (In re Hellas Telecomms.),* 526 B.R. 499, 508 (Bankr.S.D.N.Y.2015); *Lehman Bros. Holdings Inc. v. JPMorgan Chase Bank, N.A. (In re Lehman Bros. Holdings Inc.),* 469 B.R. 415, 438 (Bankr. S.D.N.Y.2012). The Court also notes the catchall provision of § 741(7)(A)(vii), which provides that a securities contract includes "any other agreement or transaction that is similar to an agreement or transaction referred to in this subparagraph." *See also Madoff,* 773 F.3d at 419 (2d Cir.2014) ("Yet another indication that Congress intended § 546(e) to sweep broadly is supplied by the text of § 741(7)(A)(vii) which expands the definition of "securities contract" to include "*any* other *agreement* or transaction that is similar to "a contract for the purchase, sale or loan of a security[.]"). Here the CMBS transaction involved the transfer of the Retail Loan into the Trust and the subsequent issuance of certificates representing investors' interests in the bundled loans. The Court rejects the Plaintiff's novel proposition that any two-tiered transaction precludes a finding that a securities contract is involved. (Response, pp. 4–5.) Nothing in the statute or case law cited by the Plaintiff mandates such a result.[5] The transactions in this case fit squarely within the definition of a securities contract as defined in § 741(7)(A) and used in § 546(e). Had Congress wished to except this sort of transaction from the ambit of §§ 546(e) and 741(7)(A), it could have done so.

---

5. To the contrary, the court may properly consider two separate transactions as a single transaction when doing so would align with economic realities. *See, e.g., Wieboldt Stores, Inc. v. Schottenstein,* 94 B.R. 488, 502 (N.D.Ill.1988).

### b. Payments made In Connection with a Securities Contract

The pleadings reveal that the Debtor's payments on the Loan were made on account of the original promissory note which was later transferred to the Trust that was subject to the PSA as part of the CMBS transaction. The Court must decide whether the payments were made "in connection with" the PSA. "[T]he words 'in connection with' are to be interpreted liberally. It is proper to construe the phrase 'in connection with' broadly to mean 'related to.'" *In re Lehman Bros. Holdings Inc.*, 469 B.R. at 442 (citing *Interbulk, Ltd. v. Louis Dreyfus Corp. (In re Interbulk, Ltd.)*, 240 B.R. 195, 202 (Bankr. S.D.N.Y.1999) (interpreting the plain language of section 546(g), an analogue to section 546(e), and concluding that "a natural reading of 'in connection with' suggests a broader meaning similar to 'related to'"); *In re Keller Fin. Servs. of Fl., Inc.*, 248 B.R. 859, 879 (Bankr.M.D.Fla.2000) (citation omitted) (interpreting section 329 of the Bankruptcy Code and noting that "the scope of the phrase 'in connection with' is broad"); *In re Powell*, 314 B.R. 567, 571 (Bankr.N.D.Tex.2004) (interpreting section 330(a) of the Bankruptcy Code and liberally construing the phrase "in connection with")). One court has examined the possibility that due to the breadth of the term "in connection with" a transfer is not required to be for the purchase or sale of securities, but merely related to an agreement for the purchase or sale of securities. *In re Quebecor World (USA) Inc.*, 480 B.R. 468, 479 n. 8 (Bankr. S.D.N.Y.2012).

In this case, the loan payments were related to a security agreement. The payments were maintained in a Distribution Account maintained by the Trust, and distributed to certificate holders based upon a distribution program set forth in the PSA.

(PSA, ¶ 4.01). The way the payments were to be maintained, held, and distributed was included in the PSA. While the payments were not necessarily made for the purchase or sale of securities, the payments were made in relation to a security agreement, the PSA, and therefore fall within the safe harbor provision of § 546(e).

The Motion to Dismiss should be Granted as to Counts I, III and IV based on the safe harbor protection afforded by § 546(e).

The Motion to Dismiss will be Granted as to Count VI, the preference claim over which this Court exercises core jurisdiction, based on the safe harbor protection afforded by § 546(e).

### E. Dismissal of Counts II and V pursuant to Federal Rules of Civil Procedure 8(a), 9(b) and 12(b)(6)

Defendants also contend that the Amended Complaint's actual fraudulent transfer claims alleged in Counts II and V must be dismissed because the claims fall short of the specificity requirements of Rule 9(b). The Court agrees.

#### 1. Rule 9(b) Pleading Standards

Where a complaint alleges fraud, as the Amended Complaint does here, a more rigorous pleading standard applies. Federal Rule of Civil Procedure 9(b), made applicable to adversary proceedings by Federal Rule of Bankruptcy Procedure 7009, provides that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake...." "A plaintiff alleging an actual fraudulent transfer under section 548(a)(1)(A) must state with particularity the circumstances constituting fraud." *Hellas*, 526 B.R. at 511. The plaintiff must plead the "how, what, when, where, and how: the first paragraph of any news-

paper story." *DiLeo v. Ernst & Young,* 901 F.2d 624, 627 (7th Cir.1990).

██ Because a defendant will rarely admit that it intended to defraud creditors, actual intent to defraud may be proved by circumstantial evidence, commonly referred to as "badges of fraud." The badges of fraud include:

(1) whether the debtor was insolvent at the time of the transfer or became insolvent as a result of the transfer;

(2) whether the debtor retained control of the asset;

(3) whether the transfer was to a family member;

(4) whether the transfer was prior to the debtor incurring a substantial debt;

(5) whether the transfer was substantially all of debtor's assets;

(6) whether the debtor received consideration for the transfer;

(7) whether the transfer was disclosed or concealed;

(8) whether the debtor made the transfer before or after being threatened with suit by creditors; and

(9) whether the debtor absconded.

*Grede v. Bank of New York Mellon,* 441 B.R. 864, 881 (N.D.Ill.2010) (internal citations omitted), *aff'd in part & rev'd in part,* 728 F.3d 660 (7th Cir.2013).

### 2. Avoidance of Actual Fraudulent Transfers

Count II seeks relief under § 548(a)(1)(A), the Bankruptcy Code's actual fraud transfer provision which provides that a trustee may avoid a transfer if the debtor "made such transfer or incurred such obligation with actual intent to hinder, delay, or defraud any entity to which the debtor was or became, on or after the date that such transfer was made or such obligation was incurred, indebted."

11 U.S.C. § 548(a)(1)(A). Count V seeks relief under § 5(a)(1) of the Illinois Uniform Fraudulent Transfer Act, which provides that "[a] transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation: (1) with actual intent to hinder, delay, or defraud any creditor of the debtor." 740 ILCS 160/5.

Generally, § 544 of the Bankruptcy Code allows a trustee to avoid transfers or obligations that are avoidable under non-bankruptcy law. It "vests the trustee with the ability of a judgment lien creditor to attach or seize both tangible and intangible property transferred by the debtor to a third party prior to filing for bankruptcy . . . ." *Alberts v. Tuft (In re Greater Se. Cmty. Hosp. Corp.),* 333 B.R. 506, 520 (Bankr.D.D.C.2005):

Federal bankruptcy law and Illinois law on fraudulent transfers are essentially identical. Illinois has adopted the Uniform Fraudulent Transfer Act ("UFTA") which was enacted to reflect federal bankruptcy law. The Seventh Circuit has noted that the UFTA was an effort to harmonize state law with the Bankruptcy Code. *Leibowitz v. Parkway Bank & Trust Co. (In re Image Worldwide, Ltd.)* 139 F.3d 574, 577 (7th Cir.1998).

In support of dismissal, Defendants argue that the Amended Complaint contains mere recitations of the "badges of fraud" and the elements required to prove an actual fraud transfer. The Court agrees.

██ The Plaintiff alleges no factual allegations tying the actions of the Debtor to the elements necessary to state a claim under § 548(a)(1)(A). For example, in the Plaintiff's attempt to link the actions of the Debtor to the badges of fraud, she alleges

that "the Debtor had been sued or threatened with suit by one or more creditors." (Amended Complaint, ¶ 60.) However, the Amended Complaint does not include details of any suit, such as the parties to the suit, the nature of the suit, or when the suit was filed in relation to when the Transfers were made. At paragraph 61 of the Amended Complaint, Plaintiff alleges that the "[d]ebtor transferred substantially all of its unencumbered assets, from time to time, when making the Two Year Transfers, often draining the Debtor's operating account." However, there are no specifics regarding the dates of the transfers, or the amounts left in the Debtor's accounts following the Transfers. Similarly, Plaintiff's assertion that the Debtor concealed certain Transfers fails to detail how the payments made to the Defendants were concealed from creditors. (Amended Complaint, ¶ 59.) Review of the schedule of payments, attached as Exhibits A, B, and C to the Amended Complaint, reveals that each payment was for the same amount and paid around the same time each month. These similarities in the payment amounts (generally payments of $87,818; $82,998; and $92,828) and dates (either the beginning or end of the month) do not suggest an attempt to deceive creditors or to avoid litigation; they may be indicative of routinely made debt service payments.

Nearly identical recitations are made in Count V of the Amended Complaint, where the Plaintiff asserts claims under the Illinois Uniform Fraudulent Transfer Act. (*See, e.g.*, Amended Complaint, ¶ 89) ("The Debtor concealed the Four Year Transfers by not disclosing them to its creditors."); (Amended Complaint, ¶ 90) ("Before some or all of the Four Year Transfers were made, the Debtor had been sued or threatened with suit."); (Amended Complaint, ¶ 91) ("The Debtor transferred substantially all of its unencumbered assets, from time to time, when making the Four Year

Transfers, often draining the Debtor's operating account."). Again, there are no specifics as to the "who, what, when, where, and how" to support the claims for actual fraud. Details such as the parties to the suit(s) and the details of how the Debtor concealed its assets from creditors are absent from the Amended Complaint. These bare-bone allegations do not satisfy the pleading standards under *Iqbal* and *Twombly,* let alone the more rigorous standard of Rule 9(b). Because the Plaintiff fails to alleged claims for fraud with specificity, Counts II and V, the actual fraud claims under federal and state law, should be dismissed without prejudice. The Defendants argue in their Reply that transfers of collateral cannot be avoided as fraudulent transfers. In her next complaint the Plaintiff should cover whether the Transfers were of collateral.

## IV. Conclusions

Because the fraudulent transfer claims alleged in Counts I, II, III, IV and V of the Amended Complaint may not be constitutionally core under the precedent set by *Stern v. Marshall* and its progeny, the Court will submit proposed findings of fact and conclusions of law to the District Court for entry of a final order in accordance with Federal Rule of Bankruptcy Procedure 9033.

The Court recommends to the District Court that Count I of the Amended Complaint, which seeks Avoidance of Fraudulent Transfers under 11 U.S.C. §§ 548(a)(1)(B) (constructive fraud) & 550, be dismissed with prejudice as the Transfers are protected by § 546(e) of the Bankruptcy Code.

The Court recommends to the District Court that Count II of the Amended Complaint, which seeks Avoidance of Fraudulent Transfers under 11 U.S.C.

§§ 548(a)(1)(A) (actual fraud) and 550, be dismissed without prejudice as the Plaintiff failed to allege fraud with specificity. The Plaintiff should be allowed to amend Count II within 30 days following entry of an order by the District Court. The safe harbor does not apply to these actual fraud claims.

The Court recommends to the District Court that Count III of the Amended Complaint, which seeks Avoidance of Fraudulent Transfers under 740 ILCS 160/5(a)(2) (constructive fraud) (made applicable through 11 U.S.C. § 544(b)(1)), be dismissed with prejudice as the Transfers are protected by § 546(e) of the Bankruptcy Code.

The Court recommends to the District Court that Count IV of the Amended Complaint, which seeks Avoidance of Fraudulent Transfers under 740 ILCS 160/6(a) (constructive fraud) (made applicable through 11 U.S.C. § 544(b)(1)), be dismissed with prejudice, as the Transfers are protected by § 546(e) of the Bankruptcy Code.

The Court recommends to the District Court that Count V of the Amended Complaint, which seeks Avoidance of a Fraudulent Transfer under 740 ILCS 160/5(a)(1) (actual fraud) (made applicable through 11 U.S.C. § 544(b)(1)), be dismissed without prejudice, because it lacks specificity. The Plaintiff should be allowed to amend Count V within 30 days after entry of an order by the District Court. The safe harbor does not apply to these actual fraud claims.

Count VI of the Amended Complaint, which seeks Avoidance and Recovery of Preferential Transfers under §§ 547(b) & 550, claims over which this court has core jurisdiction, has been dismissed with prejudice, as the Transfers are protected by § 546(e) of the Bankruptcy Code. A separate Order was entered dismissing Count VI in accordance with Federal Rule of Bankruptcy Procedure 7052.

As to Counts I–V of the Amended Complaint, this Memorandum Opinion constitutes the Court's proposed findings of fact and conclusions of law for submission to the District Court pursuant to Federal Rule of Bankruptcy Procedure 9033 and 28 U.S.C. § 157(c)(1).

The Court will hold a status hearing on this matter on May 26, 2015 at 10:30 a.m.

The April 24, 2015 Order entered herein stands.